UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BYSHOP ELLIOT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:17-CV-397-WKS |
| | ) | |
| BUFFALO CITY SCHOOL DISTRICT; | ) | |
| and CRYSTAL BOLING-BARTON, | ) | |
| McKinley High School | ) | |
| Principal, in her official | ) | |
| and individual capacities | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Byshop Elliot has filed a Motion to Dismiss Claims Against Defendant Crystal Boling-Barton, Without Prejudice, Pursuant to Fed. R. Civ. P. 41(a)(2). Plaintiff has also filed a motion for a stay of discovery and a motion for expedited consideration of the motion for a stay of discovery. For the reasons stated below, Plaintiff's Motion to Dismiss (ECF 19) is **granted**, and this case is dismissed. Plaintiff's motion for a stay of discovery (ECF 23) and motion for expedited consideration of that motion (ECF 24) are **denied** as moot.

**BACKGROUND**

On May 10, 2017, Plaintiff Byshop Elliott filed this lawsuit against the Buffalo City School District (the "District" or "BCSD") and then-Principal Crystal Boling-Barton alleging violations of the Equal Access Act and the First Amendment based

1

on McKinley High School's denials of Plaintiff's attempts to form a Gay-Straight Alliance ("GSA"). ECF 1, p. 1. Plaintiff explained that Boling-Barton: (i) has ignored applications for the creation of a GSA club at McKinley High School; (ii) has refused to consider applications for a GSA club; and (iii) is willing to allow other clubs to form, but not GSA clubs.

Plaintiff's main contention against Boling-Barton was that, as Principal of McKinley High School, she treated lesbian, gay, bisexual, transgender, queer and questioning ("LGBTQ") students as "second-class citizens" and "imposed ongoing policies and practices that openly discriminate against LGBTQ members of the school community." ECF 1, p. 1 and 5. Specifically, Plaintiff alleged that Boling-Barton made announcements over the high school's loudspeaker that LGBTQ students "are not permitted to bring a same-sex date to prom and that 'couples' tickets are reserved for opposite-sex couples." ECF 1, p. 1. Plaintiff further alleged that: (i) Boling-Barton "made it her practice while chaperoning dances to prevent same-sex couples from dancing together"; and (ii) "it was Principal Boling-Barton's well-known practice to single out same-sex couples and instruct then to separate or face discipline." ECF 1, p. 6. Finally, Plaintiff alleged that "McKinley High School is a hostile place for LGBTQ students and allies, based upon both on the ongoing absence of a GSA and on Principal Boling-Barton's perceived

antipathy towards LGBTQ students and LGBTQ issues. Principal Boling-Barton's and the District's actions . . . have created this hostile environment." ECF 1, p. 10.

Within days of the filing of this lawsuit, the District announced that a GSA would be forming at McKinley, and the GSA in fact began meeting before the close of the 2016-2017 school year. On September 1, 2017, Plaintiff Elliott and the District filed a Settlement Agreement and Proposed Order of Dismissal ("the District Settlement") resolving all claims against the District in which the District agreed to ensure the continued presence of a GSA at McKinley, provide nondiscrimination trainings for students and staff, post the District's LGBTQ nondiscrimination policy around the school, and publicly report incidents of LGBTQ bias. This Court signed an order dismissing all claims against the District pursuant to the District Settlement on October 4, 2017. ECF 14.[1]

Plaintiff's counsel then reached out to Boling-Barton's counsel seeking to resolve the remaining claims against her. After a series of communications, on February 8, 2018, counsel

---

[1] Subsequently, Boling-Barton filed a motion on October 20, 2017 to vacate the potion of the Court's Order of Dismissal which completely dismissed the District from the case. Boling-Barton wanted an order "retaining [the District] as a party in this action with respect to Mrs. Boling-Barton's crossclaim for contribution and indemnification." See ECF 15. The Court granted that motion as unopposed on February 5, 2018.

for Boling-Barton told counsel for the Plaintiff that no further settlement proposal would be considered. After being asked if she would simply stipulate to dismissal or otherwise consent to a dismissal motion, counsel stated on February 20, 2018 that Boling-Barton would oppose dismissal. Plaintiff explains that he is moving for dismissal of the remaining claims against Boling-Barton because he has secured a settlement agreement that provides all of the relief he sought and because the District has represented that the Buffalo City School District is being billed for all of Boling-Barton's ongoing legal expenses in this case. Further, Plaintiff states that he does not believe that continuing to litigate this case would benefit the students of the Buffalo City School District.

This lawsuit has clearly had a very negative impact on Boling-Barton's career. The lawsuit was widely covered by news outlets in the Western New York area, and these articles specifically highlighted the allegations (mentioned above) that Plaintiff made against Boling-Barton in his Complaint. Boling-Barton has been on paid administrative leave for nearly a year, and she asserts that the District has made no comment on when, if ever, it expects to allow her to return as Principal of McKinley High School. Boling-Barton's counsel asserts that "[b]y filing the Complaint, the Plaintiff caused Mrs. Boling-Barton to suffer: (i) irreparable injury to her reputation and character;

and (ii) pecuniary injury as she has been unable to supplement her income by participating in activities that she traditionally participated in while Principal of McKinley High School." ECF 20, p. 3.

There are several reasons that Boling-Barton refuses to consent to the motion to dismiss (discussed below), but in general, it appears that she is not willing to simply let this matter conclude absent a complete vindication that would allow her to reestablish her career and reputation. Simply put, Boling-Barton is arguing that "Plaintiff's Motion to Dismiss should be denied because Plaintiff should be put to the test to prove the numerous inflammatory allegations he has raised against Mrs. Boling-Barton." ECF 20-11, p. 5.

**LEGAL STANDARD**

A plaintiff loses his right to unilaterally dismiss a lawsuit without a court order when the defendant files an answer. *See* Fed. R. Civ. P. 41(a)(1). After an answer has been filed, Rule 41(a)(2) provides that, except where all parties agree to a stipulation of dismissal, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Whether to grant dismissal is within the discretion of the Court. *See Corrado v. New York State Unified Court Sys.*, 698 F. App'x 36, 37 (2d Cir. 2017). Although "[v]oluntary dismissal without

prejudice is . . . not a matter of right," *Corrado*, 698 F. App'x at 37 (quoting *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990)), "[g]enerally . . . 'a voluntary dismissal without prejudice ... will be allowed 'if the defendant will not be prejudiced thereby.'" *Riley v. United States*, 78 F. App'x 774, 776 (2d Cir. 2003) (quoting *Catanzano v. Wing*, 277 F.3d 99, 109 (2d Cir. 2001).

The Second Circuit has recognized that "[t]wo lines of authority have developed with respect to the circumstances under which a dismissal without prejudice might be improper." *Kwan v. Schlein*, 634 F.3d 224, 230, (2d. Cir. 2011) (quoting *Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006)). The first "indicates that such a dismissal would be improper 'if the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit.'" *Kwan*, 634 F.3d at 230 (quoting *Camilli*, 436 F.3d at 123). The second line of authority "indicates that the test for dismissal without prejudice involves consideration of various factors, known as the *Zagano* factors." *Id*. (quoting *Camilli*, 436 F.3d at 123); *see Zagano*, 900 F.2d at 14. The *Zagano* factors include: "(1) the plaintiff's diligence in bringing the motion, (2) any undue vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial, (4) the duplicative expense of

relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss." *Kwan*, 634 F.3d at 230; *see also Zagano*, 900 F.2d at 14. "These factors are not necessarily exhaustive and no one of them, singly or in combination with another, is dispositive." *Kwan*, 634 F.3d at 230.

## DISCUSSION

Boling-Barton argues that Plaintiff's motion to dismiss should be denied for the following reasons:

> (i) Mrs. Boling-Barton has expended considerable time, effort and money defending this lawsuit as well as prosecuting two other cases related to this lawsuit in New York State courts; (ii) Mrs. Boling-Barton is entitled to have this lawsuit heard on the merits in order to clear her name and prove untrue all of the inflammatory allegations made against her by the Plaintiff; (iii) Mrs. Boling-Barton needs a favorable determination in this lawsuit, made on the merits, in order to bring a malicious prosecution action against the Plaintiff; and (iv) in order to have her attorneys' fees paid by Defendant, Buffalo City School District ("BCSD"), and have BCSD indemnify her for any damages awarded to the Plaintiff in this lawsuit, Mrs. Boling-Barton may need a determination by this Court that she acted within the scope of her public employment or duties, and the injury sustained by Plaintiff, if any, was not caused by any intentional wrongdoing or recklessness on her part.

ECF 20-11, p. 2. Boling-Barton argues that "in the event the Court grants Plaintiff's Motion to Dismiss, the motion should be granted in an Order which: (i) requires the Plaintiff to pay all costs and attorneys' fees that Mrs. Boling-Barton incurred in defending this lawsuit; and (ii) expressly holds that this Court is retaining jurisdiction of this lawsuit in order to entertain

an application for costs and attorneys' fees to be filed by Mrs. Boling-Barton." ECF 20-11, p. 10.

**I.    *Zagano* Factors**

All five of the *Zagano* factors weigh in favor of dismissal. First, Plaintiff has been diligent in pursuing this dismissal. Upon learning that Boling-Barton had no further interest in settlement negotiations and would not consent to dismissal, Plaintiff immediately filed this motion to dismiss.

Second, there has been no showing of "undue vexatiousness" on Plaintiff's part. "In determining whether a party was unduly vexatious in pursuing its claim, courts consider whether the party had 'ill-motive.'" *Omega Inst., Inc. v. Universal Sales Sys., Inc.*, No. 08-CV-6473, 2010 WL 475287, at *4 (W.D.N.Y. Feb. 5, 2010) (citation omitted). Here, Plaintiff was simply seeking to establish a GSA to support LGBTQ students at McKinley High School, and there is no suggestion of ill-motive.

Third, this lawsuit is still in the early stages, and Boling-Barton's effort and expense in preparation for trial has been minimal. Generally, this factor weighs against dismissal without prejudice only if the case has progressed to an advanced stage, such as the eve of trial, *see Zagano*, 900 F.2d at 14-15, or when discovery is complete and partial dispositive motions have been adjudicated, *see Jewelers Vigilance Comm., Inc. v. Vitale Inc.*, No. 90 Civ. 1476, 1997 WL 582823, at *3 (S.D.N.Y.

Sept. 19, 1997). Here, Plaintiff is not moving to dismiss on the eve of trial. The current situation is similar to that in *Catanzano*, where the Second Circuit held that the district court abused its discretion by declining to dismiss the plaintiff's claim without prejudice since "only halting discovery had taken place" and it "had been litigated to such a limited extent." 277 F.3d at 109–10.

Fourth, there is a very low risk of duplicative relitigation, as there is no indication that a subsequent lawsuit will be brought. Plaintiff explains that, with the District Settlement, he has achieved the relief he sought from the this lawsuit.

Fifth, Plaintiff has adequately explained his reasoning for his motion to dismiss. Plaintiff and other students at McKinley High School were permitted to form a GSA, and the District Settlement imposed the other protections for LGBTQ students that Plaintiff was seeking. Plaintiff has achieved the relief he sought in this lawsuit, and while he represents to the Court that he stands by all of the claims he made against Boling-Barton in his Complaint, he essentially explains that it is not in his or other students' interests to continue with this litigation.

**II. Boling-Barton's Arguments Opposing Dismissal Fail**

While Boling-Barton's life has certainly been turned upside-down as a result of this lawsuit, she has failed to meaningfully address the factors the Second Circuit has identified as relevant to the Court's determination under Fed. R. Civ. P. 41(a)(2). The only *Zagano* factor that Boling-Barton addresses is factor number three (defendant's efforts and expense in preparation for trial). Specifically, Boling-Barton contends that she has "already expended considerable time, effort and money defending this case" because she has filed an Answer and Amended Answer, has filed two motions, has participated in a Rule 26(f) discovery planning meeting, and has issued two deposition notices and two subpoenas. *See* ECF 20-11, p. 4. However, this case is nowhere near the "eve of trial," as discovery has barely begun.

Boling-Barton does not discuss any of the other *Zagano* factors. Instead, with very thin legal support, Boling-Barton argues that this case, which is still in the pleading stage, must go forward to a full adjudication in order to support her claims in a planned malicious prosecution action against Plaintiff and in an ongoing state court action she has filed

against the District for legal fees.[2] Additionally, Boling-Barton focuses on the need to "clear her name."

These are not valid bases to deny Plaintiff's motion to dismiss. In *Camilli v. Grimes*, the Second Circuit explained why a defendant should not be able to defeat a Rule 41(a)(2) motion to dismiss by invoking a future malicious prosecution action:

> When the Supreme Court identified "plain legal prejudice" to a defendant as a circumstance that would defeat dismissal of a plaintiff's suit without prejudice, it was not thinking about a defendant's lost opportunity to retaliate against a plaintiff by suing for malicious prosecution. The Court was concerned about the plight of a defendant who is ready to pursue a claim against the plaintiff in the same action that the plaintiff is seeking to have dismissed.

436 F.3d 120, 124 (2d Cir. 2006). Boling-Barton has cited no case law in arguing that this case should be forced to go to trial in order to preserve her hypothetical malicious

---

[2] Bolton-Barton's attorney explains that the Buffalo City School District is "refusing to comply with its statutory obligations to indemnify Mrs. Boling-Barton and pay her attorneys' fees and costs, and has acted in a completely unprofessional manner by stringing Mrs. Boling-Barton along with various empty and unfulfilled promises." ECF 20, p. 6. Boling-Barton's attorney contends that her legal fees and costs have exceeded $50,000. Boling-Barton commenced an Article 78 mandamus action in New York State Court seeking an order requiring the District to indemnify her and pay her fees. Her attorney reports that the state court "has stayed the mandamus action in order to allow this Court time to determine (i) whether Mrs. Boling-Barton's alleged wrongful actions were within the scope of her public employment or duties; and (ii) if Plaintiff incurred any injury as a result of intentional wrongdoing or recklessness on the part of Mrs. Boling-Barton." ECF 20, p. 6.

prosecution claim, and *Camilli* weighs in favor of this Court rejecting it.

Similarly, Boling-Barton argues, again without citing any case law, that this Court should deny the Plaintiff's motion to dismiss because it would be helpful to her in a separate state court action that she has commenced against the District seeking payment of her legal fees and costs. She describes that action as hinging on "whether Mrs. Boling-Barton acted within the scope of her public employment or duties, and whether the injury sustained by Plaintiff, if any, was caused by any intentional wrongdoing or recklessness on the part of Mrs. Boling-Barton," and she argues that "it would be best to have this Court make[] such a determination because all persons and entities who possess knowledge of the events alleged by Plaintiff are parties in this lawsuit." ECF 20-11, p. 8-9. The Court is very reluctant to continue this litigation in order to issue what would be effectively an advisory opinion to be used in Boling-Barton's state court action.

The state court is perfectly able to determine whether "the BCSD is refusing to comply with New York State statutes which require it to indemnify Mrs. Boling-Barton in this lawsuit and to pay the costs and attorneys' fees she incurs." ECF 20-11, p. 4. Further, Boling-Barton's argument again ignores Second Circuit precedent holding that the "plain legal prejudice"

courts consider relevant to deciding a Rule 41(a)(2) motion to dismiss concerns "the plight of a defendant who is ready to pursue a claim against the plaintiff in the same action that the plaintiff is seeking to have dismissed." *Camilli*, 436 F.3d at 124. Boling-Barton is asking the Court to force a case that is essentially at the pleading stage to continue on through summary judgment or trial in order to answer a fact question in a separate state court action. It does not appear that Boling-Barton has any legal justification for doing so.

**CONCLUSION**

It is fair to say that this lawsuit has had a severe impact on Boling-Barton's life and career. Obviously she feels that Plaintiff's allegations are unfounded and wishes to clear her name. However, forcing the continuation of this action, when the Plaintiff himself has filed a motion to dismiss, is not appropriate. This case is still at a very early stage, and the case law weighing in favor of denying a plaintiff's motion to dismiss largely comes from cases that are much further along. Additionally, Boling-Barton's stated reasons for continuing this case have essentially no support in case law. Thus, Plaintiff's motion to dismiss is granted.

Boling-Barton has made two requests in the event the Court grants Plaintiff's motion to dismiss: that the Court (i) impose a condition that the Plaintiff pay all costs and attorneys' fees

that Boling-Barton incurred in defending this action; and (ii) retain jurisdiction in order to entertain an application for costs and attorneys' fees to be filed by Boling-Barton. These requests are denied. The Court has wide discretion in determining whether to award fees, and the Court finds that there is no justification for ordering Plaintiff to pay Boling-Barton's legal fees. Plaintiff has achieved the relief he sought in this lawsuit, and there has been absolutely no showing of bad faith on his part. Boling-Barton's dispute with the District over the payment of her legal fees should be resolved in the New York state court.

DATED at Burlington, Vermont, this 10th day of April, 2018.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge